**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **RAYMOND CHAPPIE**, individually and on behalf of others similarly situated,<br><br>　　　　　　　Plaintiff,<br>vs.<br><br>**ENERGI PROS LLC,**<br><br>　　　　　　　Defendant. | **CIVIL ACTION NO.** |

**COLLECTIVE ACTION COMPLAINT AND JURY DEMAND**

Plaintiff RAYMOND CHAPPIE ("Plaintiff"), on behalf of himself and on behalf of all others similarly situated, alleges against Defendant ENERGI PROS LLC ("Defendant") as follows:

**I.      PRELIMINARY STATEMENT**

1.      Plaintiff brings this collective action on behalf of himself and others similarly situated to seek relief from Defendant's willful misclassification of its "Green Energy Technology Specialists" as exempt from overtime pay, resulting in Defendant's violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*.

2.      Defendant ENERGI PROS LLC provides commercial energy saving solutions, including: site specific engineering analysis and project design, implementation of energy conservation, power generation, energy storage (thermal and electro-chemical), retrofit, new construction, energy supply, and risk management.[1]

3.      Plaintiff Chappie and the putative collective action members were misclassified as salary exempt. Since their primary job duties do not qualify for any exemption to overtime pay

---

[1] See Defendant's website: http://energipros.com/about/ (Last Accessed October 17, 2019).

under the FLSA, they should have been classified as non-exempt and received overtime pay. These employees are similarly situated under the FLSA. *See* 29 U.S.C. § 216(b).

4.      The FLSA Collective is made of all persons who work or worked for Defendant as Green Energy Technology Specialists and any other employees performing the same or similar duties for Defendant, within the United States, at any time from three years prior to the filing of this Complaint to the final disposition of this case.

5.      Plaintiff seeks relief on behalf of the FLSA Collective in the form of all unpaid overtime wages owed, plus liquidated damages, interest, attorneys' fees, and costs.

6.      Plaintiff brings this putative class action pursuant to the Fair Credit Reporting Act ("FCRA") against Defendant, who violated the FCRA's core protections by procuring background checks on employees and job applicants from a non-FCRA compliant agency without providing proper disclosure and/or obtaining authorization and taking adverse action on Plaintiff and putative class members based on the procured consumer reports without providing pre-adverse action notice, a copy of the report, a written description of rights, and reasonable time to respond to Defendant or dispute the report. Recognizing that peoples' jobs depend on the accuracy of consumer reports, Congress has chosen to regulate the procurement, use and content of such background checks through the FCRA. 15 U.S.C. § 1681.

7.      The FCRA contains several provisions which pertain specifically to the use of consumer reports for employment purposes. In light of the potentially determinative role that consumer reports can play regarding an applicant's employment prospects, the FCRA provides:

(2) Disclosure to consumer

(A) In general
Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).

8.      The disclosure and authorization requirements are important because they enable consumers to control and correct the information that is being disseminated about them by third parties. Moreover, the disclosures inform consumers about their rights pursuant to the FCRA, rights of which consumers are generally completely unaware.

9.      Consumers have a statutory right to both obtain a copy of their consumer reports and to have errors in their reports corrected. *See* 15. U.S.C. §§ 1681g, 1681i. In order to enable consumers to exercise those rights, it is critical that consumers are aware that a report is going to be procured so that, if they choose, they can request a copy of the report to proactively ensure that it does not contain any errors.

10.     Defendant has willfully and systematically violated 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer reports on Plaintiff and other putative class members for employment purposes, without first making proper disclosures and/or obtaining authorization in the format required by the FCRA.

11.     Defendant has further willfully and systematically violated 15 U.S.C. § 1681b(b)(3) by taking adverse action on Plaintiff and other putative class members based on the procured consumer reports without providing proper pre-adverse action notice, a copy of the report, a written description of rights, and reasonable time to respond to Defendant or dispute the report.

12.     Plaintiff seeks relief on behalf of the FCRA class in the form of statutory damages and/or actual damages, punitive damages, attorneys' fees, litigation costs, and all other available relief.

## II.     THE PARTIES

13.     Individual and Representative Plaintiff RAYMOND CHAPPIE is a resident of Brazoria County, Texas.

14.     Plaintiff was employed by Defendant as a Green Energy Technology Specialist from approximately July 1, 2019 through August 21, 2019.

15.     Plaintiff worked at Defendant's Houston, Texas location.

16.     Defendant ENERGI PROS LLC is a corporation headquartered at 608 Regency Trail, McKinney, Texas 75072.

17.     Defendant's registered office address is 100 HIGH LONESOME TRL, FORT DAVIS, TX 79734.

## III.     JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case is brought under the FLSA and FCRA.

19.     This Court may properly maintain personal jurisdiction over Defendant because Defendant resides in this state and Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

20.     Venue is proper in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims set forth herein occurred in this district.

## IV.   FLSA ALLEGATIONS

21.     Defendant was the "employer" of Green Energy Technology Specialists within the meaning of the FLSA, 29 U.S.C. § 203(d).

22.     Defendant is an enterprise whose annual gross volume of sales made or business done exceeds $500,000.

23.     Defendant is an enterprise that has had employees engaged in commerce or in the production of goods for commerce, and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.

24.     Green Energy Technology Specialists' primary duty was conducting free energy audits for companies.

25.     Green Energy Technology Specialists' primary duty was *not* making sales, and did not otherwise fall within any exemptions to overtime pay under the FLSA.

26.     Defendant suffered and permitted Green Energy Technology Specialists to work more than forty (40) hours per week.

27.     Defendant was aware, or should have been aware, that Green Energy Technology Specialists were regularly working in excess of forty (40) hours in a workweek.

28.     Defendant willfully misclassified Green Energy Technology Specialists as exempt from overtime pay and only paid them for up to forty (40) hours in a workweek, but not more, despite the fact that they typically worked significantly more hours.

29.     Defendant willfully failed to pay Green Energy Technology Specialists overtime pay for hours worked in excess of forty (40) in a workweek at a rate not less than time-and-a-half (1.5) of their regular rate of pay.

30.     Plaintiff brings this action on behalf of himself and other employees similarly situated as authorized under the FLSA, 29 U.S.C. § 216(b) (the "FLSA Collective"):

*All persons who work or worked for Defendant as Green Energy Technology Specialists and any other employees performing the same or similar duties for Defendant, within the United States, at any time from three years prior to the filing of this Complaint to the final disposition of this case.*

31.     The primary job duties of Plaintiff and members of the FLSA Collective were conducting free energy audits for companies.

32.     Defendant willfully misclassified Plaintiff and members of the FLSA Collective as exempt from overtime pay and only paid them for up to forty (40) hours in a workweek, but not more, despite the fact that they typically worked significantly more hours.

33.     Defendant's conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiff and the FLSA Collective.

34.     Defendant is liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and as such, notice should be sent to the members of the FLSA Collective. There are numerous similarly situated current and former employees of Defendant who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join. Those similarly situated employees are known to Defendant and are readily identifiable through Defendant's records.

## V.     FCRA ALLEGATIONS RELATING TO PLAINTIFF RAYMOND CHAPPIE

35.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

36.     In or around August 2019, Defendant directed an outside consumer reporting agency, TruthFinder, to provide a consumer report containing information regarding Plaintiff.

37.    Defendant's purpose in directing TruthFinder to provide a consumer report containing information regarding Plaintiff was to evaluate Plaintiff's eligibility to work for Defendant.

38.    Prior to the time at which Defendant directed TruthFinder to provide a consumer report containing information regarding Plaintiff, Plaintiff had not been provided with a proper standalone disclosure that a consumer report could be obtained for purposes of his employment.

39.    On or about August 10, 2019, Plaintiff received an e-mail from Defendant's Chief Operating Officer Jamie Tetrault, inviting him to a meeting.

40.    At this meeting, Tetrault informed Plaintiff that he had procured a background report on him and that he would have to share the results with the managing partners.

41.    On August 20, 2019, Tetrault e-mailed Plaintiff informing him that he was being terminated on account of the results of the background report.

42.    On August 21, 2019, Tetrault invited Plaintiff to a meeting, during which he told Plaintiff that he was terminated because of the report.

43.    On August 22, 2019, Plaintiff received a link to the report, which was accessed through TruthFinder.

44.    The consumer report TruthFinder furnished to Defendant allegedly bore on Plaintiff's character and general reputation.

45.    Based on the information contained in the consumer report obtained from TruthFinder, Defendant determined that Plaintiff was ineligible to continue working for Defendant.

46.    Defendant did not provide Plaintiff with a reasonable opportunity to respond to or dispute the results of the background report before taking adverse action against him.

47.     Defendant did not provide Plaintiff with a written description of his rights under the FCRA before taking adverse action against him.

48.     Defendant did not provide Plaintiff with a copy of the background report they procured before taking adverse action against him.

49.     Defendant failed to provide Plaintiff proper adverse action notice with adequate disclosures regarding the outside consumer reporting agency that provided the background report and Plaintiff's rights to free disclosure of the report and to dispute the accuracy of the information contained in the report.

50.     Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring a consumer report on Plaintiff for employment purposes despite the fact that Plaintiff was not provided with any disclosure, much less a clear and conspicuous written disclosure, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes. ("Disclosure Claim").

51.     Defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A)(i) by procuring a consumer report on Plaintiff for employment purposes despite the fact that Plaintiff did not provide authorization to Defendant to procure the report. ("Authorization Claim").

52.     Defendant further willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by taking adverse action—i.e. determining that Plaintiff was ineligible to continue working for Defendants—based on the consumer report without providing Plaintiff with a written description of his rights under the FCRA or a copy of the background report. ("Adverse Action Claim").

## VI.     FCRA CLASS ALLEGATIONS

53.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

54.     Defendant conducts background checks on their job applicants.

55.     Defendant does not perform these background checks in-house. Rather, Defendant relies on outside consumer reporting agencies to obtain this information and report it to Defendant.

56.     These reports constitute "consumer reports" for purposes of the FCRA.

57.     Defendant uses TruthFinder as a consumer reporting agency.

58.     The FCRA requires that, prior to procuring consumer reports, persons must certify to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure requirements. *See* 15 U.S.C. § 1681b(b).

59.     TruthFinder is not an FCRA compliant agency and states on its website that the information it provides should not be used for employment purposes.

60.     TruthFinder contains the following disclaimer on its website:

DISCLAIMER: You may not use our service or the information it provides to make decisions about consumer credit, employment, insurance, tenant screening, or any other purpose that would require FCRA compliance. TruthFinder does not provide consumer reports and is not a consumer reporting agency. (These terms have special meanings under the Fair Credit Reporting Act, 15 USC 1681 et seq., ("FCRA"), which are incorporated herein by reference.) The information available on our website may not be 100% accurate, complete, or up to date, so do not use it as a substitute for your own due diligence, especially if you have concerns about a person's criminal history. TruthFinder does not make any representation or warranty about the accuracy of the information available through our website or about the character or integrity of the person about whom you inquire. For more information, please review TruthFinder Terms of Use.

61.     Despite these representations on TruthFinder's website, Defendant systematically procured consumer reports for employment purposes from TruthFinder, a non-FCRA compliant agency, failed to provide proper disclosures and/or obtain authorization before procuring consumer reports for employment purposes, and failed to provide written description of rights under the FCRA, copies of background report, and/or reasonable time to respond or dispute consumer reports before taking adverse action.

62.     Defendant's practices violate a fundamental protection afforded to employees under the FCRA, are contrary to the unambiguous language of the statute and are counter to longstanding judicial and regulatory guidance.  In a 1998 advisory opinion letter, the Federal Trade Commission stated: "Section 604(b) of the FCRA requires any employer who intends to obtain a consumer report for employment purposes to disclose this to the applicant or employee (in a document that consists solely of the disclosure) and to obtain the applicant or employee's written permission."[2]

63.     By systematically failing to provide disclosures, Defendant willfully violated 15 U.S.C. § 1681b(b)(2) and (3).

64.     Defendant's willful conduct is reflected by, *inter alia*, the following:

   a.  The FCRA was enacted in 1970; Energi Pros LLC, which was founded in 1993, has had over 26 years to become compliant;

   b.  Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

   c.  Defendant knew or had reason to know from their communications with TruthFinder that their conduct violated the FCRA;

---

[2] Federal Trade Commission, Advisory Opinion to Hauxwell (06-12-98) (June 12, 1998), available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-hauxwell-06-12-98.

d.  Defendant repeatedly and routinely failed to provide any disclosure to procure consumer reports;

e.  Despite the explicit statutory text and depth of guidance directing a standalone document, Defendant systematically failed to provide proper disclosures and/or obtain authorization before procuring consumer reports for employment purposes, and failed to provide written description of rights under the FCRA, copies of background report, and/or reasonable time to respond or dispute consumer reports before taking adverse action; and

f.  By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

65.  Plaintiff asserts the Disclosure and Authorization Claims on behalf of the class defined as follows:

*Any person whose consumer report was procured by Defendant for employment purposes in the period beginning 2 years prior to the filing of the Complaint and continuing through the date the class list is prepared.*

66.  Plaintiff asserts the Adverse Action Claim on behalf of the subclass defined as follows:

*Any person on whom Defendant has taken adverse action based in whole or in part on any information contained in a consumer report in the period beginning 2 years prior to the filing of this Complaint and continuing through the date the class list is prepared.*

67.  Numerosity: The class is so numerous that joinder of all class members is impracticable. Defendant regularly fails to provide any disclosure to procure consumer reports on job applicants. Thousands of employees of Defendant and/or companies for which Defendant provides support services satisfy the class definition.

68.     Typicality: Plaintiff's claims are typical of the members of the class. Defendant regularly fails to provide any disclosure to procure consumer reports on prospective and existing employees. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistent with other class members in accordance with their standard practices.

69.     Adequacy: Plaintiff will fairly and adequately protect the interests of the class and has retained counsel experienced in complex class action litigation.

70.     Commonality: Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class, including but not limited to:

   a. Whether Defendant procured consumer reports on prospective and existing employees;

   b. Whether Defendant violated the FCRA by procuring such consumer reports without a FCRA-compliant disclosure;

   c. Whether Defendant's FCRA violations were willful;

   d. The proper measure of statutory damages; and

   e. The proper measure of punitive damages.

71.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the class predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA. Class certification will also preclude the need for unduly duplicative litigation that might result in

inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

72.     Plaintiff intends to send notice to all members of the class to the extent required by Fed. R. Civ. P. 23. The names and addresses of the class members are available from Defendant's records.

**COUNT I**
**Violation of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq.**
**Failure to Pay Overtime Wages**

73.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

29 U.S.C. § 207(a)(1) provides:

[N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which she is employed.

Plaintiff and the FLSA Collective members regularly worked more than forty (40) hours per workweek.

74.     Pursuant to 29 U.S.C. § 216(b), Plaintiff has filed his "written consent." *See* Doc. 1, **Exhibit 1**.

75.     Defendant failed to properly pay Plaintiff and the FLSA Collective members overtime wages at a rate not less than one and one-half (1.5) times their regular rate of pay for all hours they worked in excess of forty (40) per workweek.

76.     Defendant's conduct and practices, described herein, were willful, intentional, unreasonably, arbitrary, and in bad faith.

77.     Because Defendant willfully violated the FLSA, a three (3) year statute of limitations shall apply to such violation pursuant to 29 U.S.C. § 255(a).

78.     As a result of Defendant's uniform and common policies and practices described above, Plaintiff and the FLSA Collective members were illegally deprived of overtime wages earned, in such amounts to be determined at trial, and are entitled to recovery of such total unpaid amounts, liquidated damages, reasonable attorneys' fees, costs and other compensation pursuant to 29 U.S.C § 216(b).

## COUNT II
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)(A)(i)
### Procuring Consumer Reports without First Making Proper Disclosures

79.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

80.     Defendant procured consumer reports, as defined by the FCRA, on Plaintiff and other class members. These reports were procured for employment purposes without Plaintiff or any class members being provided a proper clear and conspicuous disclosure made in writing, in a document consisting solely of the disclosure, that a consumer report may be obtained for employment purposes in violation of 15 U.S.C. § 1681b(b)(2)(A)(i).

81.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681b(b)(2)(A)(i).

82.     Defendant's procurement of Plaintiff's consumer report without proper disclosure or authorization caused him to sustain actual damages, i.e. lack of knowledge as to the type and scope of consumer report that was going to be procured from a consumer reporting agency, the unauthorized invasion of his privacy, the loss of opportunity to respond to and/or dispute the information in his consumer report, and loss of employment and income.

83.     Plaintiff and the class are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

84.     Plaintiff and the class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

85.     Plaintiff and the class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT III
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)(A)(ii)
### Procuring Consumer Reports Without Authorization

86.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

87.     Defendant procured consumer reports, as defined by the FCRA, on Plaintiff and other class members. These reports were procured for employment purposes without Plaintiff or any class members giving Defendant authorization to procure the reports in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii).

88.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681b(b)(2)(A)(ii).

89.     Defendant's procurement of Plaintiff's consumer report without authorization caused him to sustain actual damages, i.e. lack of knowledge as to the type and scope of consumer report that was going to be procured from a consumer reporting agency, the unauthorized invasion of his privacy, loss of opportunity to respond to and/or dispute the information in his consumer report and loss of employment and income.

90.     Plaintiff and the class are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

91.     Plaintiff and the class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

92.     Plaintiff and the class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT IV**
**Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)**
**Taking Adverse Action without Complying with 15 U.S.C. § 1681b(b)(3)**

93.     Plaintiff repeats and re-alleges all of the foregoing paragraphs, as if set forth fully herein.

94.     Pursuant to 15 U.S.C. § 1681b(b)(3), an employer must satisfy these conditions before taking adverse action based on a consumer report:

> (A) In general
> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the

person intending to take such adverse action shall provide to the consumer to whom the report relates—

>> (i) a copy of the report; and

>> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) 1 of this title.

95.     Congress has clarified that the "employer must [] provide the consumer with *a reasonable period* to respond to any information in the report that the consumer disputes[,] and with written notice and the opportunity and time period to respond." [3]

96.     Further, a "reasonable period for the employee to respond to disputed information is not required to exceed 5 business days following the consumer's receipt of the consumer report from the employer." H.R. REP. 103-486 at 40. While four days may not be "reasonable," eight days has been deemed a "reasonable period."[4]

97.     Defendant took adverse action against Plaintiff and other class members based on information in their consumer reports without first sending them pre-adverse action notices, which deprived Plaintiff and other class members of an opportunity to review and address any issues in their reports.

98.     Defendant failed to provide Plaintiff and other class members a copy of the procured background report before they took the adverse action against Plaintiff and other class members.

99.     Defendant took adverse action against Plaintiff and other class members based on information in their consumer reports without first providing Plaintiff and other class members with a written description of their rights under the FCRA.

---

[3] See *Reardon v. ClosetMaid Corp.*, No. 2:08-CV-01730, 2013 WL 6231606, at *13 (W.D. Pa. Dec. 2, 2013); H.R. REP. 103-486 at 40 (1994).
[4] *Id.*

100.    Defendant took adverse action against Plaintiff and other class members based on information in their consumer reports without giving them sufficient time after providing notice, a copy of the report, and a written summary of their rights to allow them to discuss the report with Defendant or otherwise respond before the adverse action was taken.

101.    The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of their obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681b(b)(3)(A)(ii).

102.    By taking adverse action against Plaintiff without first providing him with a pre-adverse action notice, a copy of the background report, a written description of his FCRA rights, and reasonable time to respond or dispute the report's findings before the adverse action was taken, Defendant caused him to sustain actual damages, i.e. loss of opportunity to respond to and/or dispute the information in her consumer report and loss of employment and income.

103.    Plaintiff and the class are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

104.    Plaintiff and the class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

105.    Plaintiff and the class are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Chappie, on behalf of himself and the Proposed FLSA Collective and FCRA Class, requests judgment and the following specific relief against Defendant as follows:

(A)     A declaratory judgment that Defendant's wage practices alleged herein violate the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and attendant regulations at 29 C.F.R. § 516, *et seq.*;

(B)     Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

(C)     Determining that this action may proceed as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the FCRA claims set forth herein;

(D)     Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, e-mail addresses, telephone numbers, dates of birth, job titles, dates of employment and locations of employment of all members of the FLSA Collective;

(E)     Authorizing Plaintiff's counsel to send notice(s) of this action to all members of the FLSA Collective and FCRA Class, including the publishing of notice in a manner that is reasonably calculated to apprise the collective members of their rights by law to join and participate in this lawsuit;

(F)     Designating Plaintiff as the representative of the FLSA Collective and FCRA Class in this action;

(G)     Designating the undersigned counsel as counsel for the FLSA Collective and FCRA Class in this action;

(H)     Declaring that Defendant committed multiple, separate violations of the FCRA;

(I)     Declaring that Defendant's violations of the FLSA and FCRA were willful;

(J)     Judgment for damages for all unpaid overtime compensation and liquidated damages to which Plaintiff and the members of the FLSA Collective are lawfully entitled under the FLSA, 29 U.S.C. § 201, *et seq.,* and attendant regulations at 29 C.F.R. § 516, *et seq.*;

(K)     Awarding actual, statutory and/or punitive damages as provided by the FCRA;

(L)     An incentive award for the Plaintiff for serving as representative of the FLSA Collective and FCRA Class in this action;

(M)     Awarding reasonable attorneys' fees and costs incurred by Plaintiff in this action as provided by the FLSA and FCRA; and

(N)     Judgment for any and all civil penalties to which Plaintiff and the members of the FLSA Collective and FCRA Class may be entitled; and

(O)     Such other and further relief as to this Court may deem necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, RAYMOND CHAPPIE, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated:  November 13, 2019                    Respectfully submitted,

_/s/ **Charles W. Branham, III**_
Charles W. Branham, III
Texas State Bar No. 24012323
DEAN OMAR BRANHAM SHIRLEY, LLP
302 N. Market Street, Suite 300
Dallas, TX 75202
T: (214) 722-5990
F: (214) 722-5991
tbranham@dobslegal.com

Jason T. Brown*
Nicholas Conlon*
Lotus Cannon*
BROWN, LLC
111 Town Square Place, Suite 400
Jersey City, NJ 07310
T: (877) 561-0000
F: (855) 582-5297
jtb@jtblawgroup.com
nicholasconlon@jtblawgroup.com
lotus.cannon@jtblawgroup.com

* to be admitted Pro Hac Vice

_Attorneys for Plaintiff and the_
_Putative Collective and Class_